# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

JEFFREY WOODRUFF,          )
                             )
      Plaintiff,             )
                             )
v.                        )  Case No.: 2:16-cv-00281-SGC
                             )
BLUE CROSS AND BLUE SHIELD  )
OF ALABAMA, et al.,          )
                             )
      Defendants.         )

## MEMORANDUM OPINION[1]

The plaintiff filed the amended complaint in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), asserting that defendant Blue Cross Blue Shield of Alabama ("BCBS") wrongfully denied his request for reimbursement of medical care expenses, in violation of 29 U.S.C. § 1001, *et seq.*[2] (Doc. 4).[3]  The plaintiff asserts that defendant Southern Company Services, Inc. Healthcare Plan ("SCSHP") is also liable for the denial of benefits under the plan.[4]

---

[1] The parties have consented to dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 18).

[2] By memorandum opinion and order dated March 23, 2017, the court dismissed the plaintiff's claims for equitable relief.  (Doc. 34).

[3] References to the parties' pleadings are cited to the document numbers and page numbers assigned by CM-ECF, the court's electronic filing system.

[4] In its motion for judgment on the record, this defendant refers to itself as "Southern Company Services, Inc. Health and Welfare Benefits Plan, formerly known as the Southern Company Services, Inc. Healthcare Plan."  (Doc. 24).  For simplicity's sake, the court refers to this defendant as either "SCSHP" or "the Plan."

(*Id.*).  Defendant SCSHP filed a motion for judgment on the record and supporting brief, defendant BCBS filed a motion for summary judgment and supporting brief, and the plaintiff filed responses to both motions, after which the defendants filed replies.  (Docs. 24, 25, 27, 28, 30-33).  The parties also filed the administrative record under seal.  (Doc. 29).[5]

Upon consideration of the pleadings, memoranda, and administrative record, the court concludes the defendants' motions (Docs. 24, 27) are due to be granted and that judgment is due to be entered in favor of both defendants for the reasons stated below.

I.    <u>**Factual Background**</u>

The underlying, material facts of this case are not in dispute.  The plaintiff had health benefits coverage through the employee group welfare plan of Southern Company Services, Inc.  (Doc. 28 at 3; Doc. 30 at 2).  The SCSHP documents state that the Plan is administered by the Benefits Administration Committee and that one of the Claims Administrators is BCBS.[6]  (AR 000367-68).  The Plan further states that the "Plan Administrator . . . has the exclusive discretionary authority to: interpret the Plan, decide all questions of eligibility for benefits, and determine the amount of these benefits."  (AR 000377).  The Plan continues:

---

[5]  References to the Administrative Record are cited as "(AR ___)."

[6]  The Plan designates several claims administrators for the various benefits it provides.  (AR 000368).  The parties do not dispute that for purposes of this case, BCBS is the relevant claims administrator.

> The Plan Administrator has delegated to your Claims Administrator . . . the discretionary responsibility and authority to determine benefit claims under the Plan .... Whenever the Claims Administrators . . . make reasonable determinations that are neither arbitrary nor capricious in their administration of the Plan, those determinations will be final and binding on you . . . .

(AR 000378).

The plaintiff was diagnosed with and treated for prostate cancer in 2011. (AR 000008). Due to indications of a recurrence of his cancer, the plaintiff's treating physician in Birmingham, Alabama, recommended intensity modulated radiation therapy ("IMRT"). (*Id.*). Rather than move forward with this Plan-covered procedure, the plaintiff learned from the internet about proton beam radiation treatment ("PBRT"), went to Loma Linda University Medical Center in Loma Linda, California, and sought an opinion about his suitability for PBRT from Dr. Ivan Namihas. (*Id.*). Dr. Namihas determined the plaintiff was a viable candidate for PBRT, and the plaintiff opted to move forward with that treatment, rather than IMRT, as recommended by the Birmingham oncologist. (AR 000012).[7]

---

[7] In his response to BCBS's motion for summary judgment, the plaintiff asserts he was receiving "recurrence proton cancer treatment . . . because he suffered a secondary cancer from the first attempt with IMRT treatment." (Doc. 30 at 18). No evidence supports this assertion. Rather, as set forth by the plaintiff in a March 2014 letter to BCBS, he had surgery in which his prostate was removed in June 2011. (AR 000168). Because that surgery was not successful in eliminating the cancer, the plaintiff was referred to an oncologist for salvage treatment for prostate cancer. (AR 000169). The oncologist recommended IMRT. (*Id.*). However, the plaintiff did online research of other treatment options and learned about PBRT. (*Id.*). The plaintiff continues, "I decided to receive the [PBRT] at Loma Linda instead of the IMRT [] offered in Birmingham . . . ." (*Id.*). Thus, the plaintiff's representation in his response that he suffered a secondary cancer after his first attempt with IMRT treatment is wholly contradicted by the record. (Doc. 30 at 18).

On November 9, 2012, Dr. Namihas sought a pre-determination opinion from BCBS concerning coverage for the treatment. (AR 000007, 000014). BCBS responded that PBRT:

> does not meet medical criteria for coverage under the Plan …. per Policy #348 for treatment of prostate cancer[.] The clinical outcomes with this treatment have not been shown to be superior to other approaches including intensity modulated radiation therapy (IMRT) or conformal radiation therapy.

(AR 000005; *see also* AR 000018). The plaintiff and Dr. Namihas were provided with information on how to request reconsideration of the pre-determination denial of coverage. (AR 000018). No request for reconsideration was filed.

The plaintiff, thus armed with knowledge the Plan would not provide coverage for the costs of PBRT, decided to proceed with the therapy and pay for it himself. (AR 000019). After successfully completing treatment, the plaintiff attempted to appeal the pre-determination denial in March 2013. (*Id*.). BCBS responded that, because the plaintiff had already received the treatment, he needed to file a claim for the medical services received rather than an appeal of the pre-determination decision. (AR 000019, 000021). Instead of filing a claim, on April 3, 2013, Dr. Namihas filed an appeal of the pre-determination decision. (AR 00023). That appeal request states

> Dr. Ivan C. Namihas is requesting an appeal for Proton Beam Radiation Treatment for prostate cancer, BCBS Alabama denied (prior authorization) for services, Mr. Jeffery Woodruff paid cash for services and is requesting that Dr. Ivan C. Namihas (Loma Linda

Radiation) submit an appeal for review on his behalf. Clinical end of treatment notes, letter of medical necessity, several clinical support documents are attached to support medical necessity and appropriateness for proton radiation services which have been rendered.

Please consider this one time acception (sic) for coverage, this was the best form of treatment for Mr. Woodruff.

(AR 000023).

By a letter attached to this appeal, Dr. Namihas challenged the conclusions of Medical Policy #348. (AR 000028). After a review of the literature concerning treatment of prostate cancer, Dr. Namihas asserted that, while no randomized clinical trials showing the efficacy of PBRT as opposed to IMRT exist, no such trials should be required because the effects of radiation on human tissue are already known to be harmful.[8] (AR 000028-29). However, Dr. Namihas also recognized that IMRT is considered "the gold standard" for radiation therapy for prostate cancer by "some radiation oncologists." (AR 000029). In response, BCBS again stated that because the medical services at issue had already been provided, the plaintiff had to submit a claim, rather than a pre-determination appeal, for coverage consideration. (AR 000076-77).

---

[8] PBRT relies on protons rather than x-rays, thus theoretically limiting the amount of collateral damage to surrounding tissue from radiation. (AR 000029). Based on Dr. Namihas's statement that PBRT is "clearly superior" to IMRT, he opined that any trial to demonstrate PBRT's superior efficacy would be "unethical." (AR 000028). However, the role of this court is not to determine the best course of treatment for prostate cancer, or even whether PBRT is superior to IMRT, but only whether the decision of the Plan to deny coverage benefits was legally acceptable under the terms of the Plan.

On November 7, 2013, an attorney on behalf of the plaintiff sent BCBS a letter inquiring as to the status of the plaintiff's appeal and resubmitting the same documents from April 2013. (AR 000079-90). On December 12, 2013, BCBS responded by stating it could not locate a claim for the PBRT treatment. (AR 000153, 000157). The plaintiff then submitted a "Medical Expense Claim Form," a letter dated March 4, 2014, and a copy of bills and payments for his treatment. (AR 000167-189). In his letter, the plaintiff states he entered a contract with Lima Linda Medical Center to pay $80,000.00 for his treatment and requests BCBS reimburse this amount as his out of pocket expense. (AR 000171). BCBS responded to the plaintiff by stating it had not received a claim for the plaintiff's treatment from Loma Linda University Medical Center but, because Loma Linda was a preferred provider with their local Blue Cross and Blue Shield Plan, the plaintiff should have Loma Linda submit a claim with that local Blue Cross and Blue Shield. (AR 000192-193). BCBS stipulates it received two claims from Loma Linda. (Doc. 28 at 11). On April 21, 2014, BCBS again determined the Plan did not provide coverage for PBRT and denied the plaintiff's claim. (AR 000195).

Through counsel, the plaintiff appealed the denial decision on January 9, 2015. (AR 000227). In that appeal, counsel for the plaintiff asserted that a "recent study … demonstrated the potential for higher biochemical control rates with

proton therapy than with even the most advanced forms of other radiation therapies." (*Id*.). Thus, he argues, PBRT was medically necessary because the dangers of radiation, including the development of secondary cancers, are well-documented; it was cost-effective because it results in fewer side effects than other treatments; and it was superior to other forms of treatment because protons do less damage than other forms of radiation. (AR 000228-232). BCBS denied that appeal. (AR 000274).

In August 2015, yet another attorney acting on behalf of the plaintiff requested BCBS reconsider the claim denial. (AR 000282). BCBS responded in October 2015 that although the plaintiff's appeal was untimely, BCBS referred the matter to an Independent Review Organization for a peer clinical review. (AR 000681). Dr. Harold Kim, to whom the matter was referred, responded that PBRT was considered experimental/investigational; was not medically necessary; and did not qualify as a covered benefit under the Plan language. (AR 000682-685). Dr. Kim noted no randomized studies had been published which conclusively showed any advantage to PBRT over the current treatment standard of IMRT. (AR 000682). Because of that lack of published studies, "it is reasonable, at the present time, to consider proton therapy as investigational/experimental." (AR 000683). Dr. Kim further reported that the 2014 ASTRO[9] model policy stated, "At the

---

[9] ASTRO stands for American Society for Radiation Oncology.

present time … the comparable efficacy of proton beam therapy with other prostate cancer treatments is still being developed, and thus the role of proton beam therapy for localized prostate cancer within the current availability of treatment options remains unclear." (AR 000683).

BCBS then sought a second opinion regarding whether PBRT was experimental/investigatory and whether it was medically necessary. (AR 000735). Dr. David Hsu, like Dr. Kim, concluded PBRT was considered experimental/investigatory and, therefore, not medically necessary. (*Id*.). He too stated that insufficient clinical peer review literature existed to allow a conclusion that PBRT was either safer or more effective than standard therapies such as IMRT. (AR 000736).

This lawsuit followed the denial of the plaintiff's appeal.

## II. <u>Standard of Review</u>

ERISA itself provides no standards for evaluating a plan administrator's determination. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Therefore, the Eleventh Circuit Court of Appeals has set out the following steps to apply in reviewing any ERISA plan benefit decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.,* 644 F.3d 1350, 1355 (11th Cir. 2011); *see also*

*Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).

Because the administrator here is granted broad discretionary authority by the Plan, the court must apply an arbitrary and capricious standard of review. *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997). This court is limited to the evidence that was before the claims administrator when it denied the claim for benefits. *Jett v. Blue Cross & Blue Shield of Ala., Inc*., 890 F.2d 1137, 1140 (11th Cir. 1989); *see also Glazer v. Reliance Standard Life Ins. Co*., 524 F.3d 1241, 1246 (11th Cir. 2008) ("The court must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator."). Because the Plan is self-funded but

delegated all authority for payment of claims to BCBS as the claims administrator, no conflict of interest exists. *See, e.g., Blankenship*, 644 F.3d at 1355.

## III.  <u>Legal Analysis</u>

### A.  SCSHP's Motion for Judgment on the Record

Defendant SCSHP asserts BCBS, and not the Plan itself, administered and decided the plaintiff's claim for benefits. (Doc. 25 at 1-2). Thus, SCSHP argues it is not a proper party because it had no authority under the Plan to decide the plaintiff's claim. (*Id*. at 2). In his response, the plaintiff admits the Plan delegated to BCBS both the discretionary authority and the responsibility to decide claims for medical benefits under the Plan. (Doc. 31 at 2-3). The parties agree BCBS is both the claims administrator and the claims fiduciary under the terms of the Plan, and that claims for benefits are wholly decided by BCBS. (Doc. 25 at 3; Doc. 31 at 3). Moreover, the plaintiff admits the Plan states "[t]he decisions of the Claims Fiduciary are final and binding on all parties." (AR 000366; Doc. 31 at 3).

In the face of the foregoing, the plaintiff argues his claim for benefits against SCSHP is proper because it is the entity capable of providing relief. (Doc. 31 at 4). He reaches this conclusion based on the Plan language that it is "self-insured." (*Id.*). However, the plaintiff does not dispute that during all time periods relevant to this case, BCBS had the sole authority to decide claims for benefits under the Plan, regardless of how the Plan was funded. "As 'the party that controls

administration of the plan,' BCBS is '[t]he proper party defendant in an action concerning ERISA benefits.'" *Heffner v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006) (citing *Garren v. John Hancock Mut. Life. Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (alterations in original)). Moreover, "the party with decisional control over the Plaintiff's benefits claim ... is the *only* proper defendant in an action concerning ERISA benefits." *Sanders v. Temenos USA, Inc.,* 2017 WL 3336719, *4 (S.D. Fla. Aug. 4, 2017) (emphasis in original) (citing *Milton v. Life Ins. Co. of N. Am.*, 2012 WL 2357800, *1 (N.D. Ala. June 20, 2012)).

Because the parties agree and the Plan documents establish that BCBS had sole authority to determine eligibility for benefits under the Plan, defendant SCSHP's motion for judgment on the record (Doc. 24) is due to be granted.

**B.     BCBS's Motion for Summary Judgment**

The court now turns to the steps set forth by the Eleventh Circuit in reviewing an ERISA benefits decision.  The court must start with an examination of the Plan and evaluate the claims administrator's interpretation of the Plan to determine whether it is "wrong."  *Glazer,* 524 F.3d at 1246.  A decision is "wrong" if, after a *de novo* review, "the court disagrees with the administrator's decision." *Id. (citing Williams v. BellSouth Telecomms., Inc.,* 373 F.3d 1132, 1138 & n.8 (11th Cir. 2004)); *see also Jett,* 890 F.2d at 1139 ("the  function of the court is to

determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."). If the court determines the administrator's decision was correct under the Plan, the analysis ends, and the decision is affirmed. *Glazer,* 524 F.3d at 1246-1247 (citing *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006)).

Should the court find BCBS's decision was "wrong" upon *de novo* review, it must still affirm if the record reveals the decision has a reasonable basis. *Bacon v. Stiefel Laboratories, Inc.,* 590 F. App'x 903, 905 (11th Cir. 2014) (citing *Levinson v. Reliance Std. Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001)). Whether an administrator's decision is either *de novo* correct or reasonable is a question of law. *Blankenship*, 644 F.3d at 1354.

The Plan contains the following relevant definitions:

"Investigational:"

Any treatment, procedure, facility, equipment, drugs, drug usage, or supplies that either the Claims Administrator has not recognized as having scientifically established medical value, or that does not meet generally accepted standards of medical practice. When possible, the Claims Administrator develops written criteria (called medical criteria) concerning services or supplies that are considered to be investigational. These criteria are based on peer-reviewed literature, recognized standards of medical practice, and technology assessments. ***These medical criteria are in policies that are made available to the medical community and members. This is done so that you and your providers will know in advance, when possible, what the Claims Administrator will pay for. If a service or supply is considered investigational according to one of these published medical criteria policies, the Claims Administrator will not pay for***

*it.* If the investigational nature of a service or supply is not addressed by one of these published medical criteria policies, the Claims Administrator will consider it to be non-investigational only if the following criteria are met:

- The technology must have final approval from the appropriate government regulatory bodies;
- The scientific evidence must permit conclusions concerning the effect of the technology on health outcomes;
- The technology must improve the net health outcome;
- The technology must be as beneficial as any established alternatives; and
- The improvement must be attainable outside the investigational setting.

It is important for you to remember that when your Claims Administrator makes determinations about the investigational nature of a service or supply it is making them solely for the purpose of determining whether to pay for the service or supply. All decisions concerning your treatment must be made solely by your attending physician and other medical providers.

(AR 000332) (emphasis added).

"Medically Necessary or Medical Necessity" is defined as:

These terms are used to determine whether a particular service or supply will be covered. When possible, written criteria (called medical criteria) are developed and used to determine medical necessity. These criteria are based on peer-reviewed literature, recognized standards of medical practice, and technology assessments. ***These medical criteria are included in policies that are available to the medical community and to you, so that you and your providers will know in advance, when possible, what the Plan will cover. If a service or supply is not medically necessary according to one of these published medical criteria policies, it will not be covered.*** If a service or supply is not addressed by one of these

published medical criteria policies, it will be considered to be medically necessary only if your Claims Administrator determines that it is:

- appropriate and necessary for the symptoms, diagnosis, or treatment for your medical condition;
- provided for the diagnosis or direct care and treatment of your medical condition;
- in accordance with standards of good medical practices accepted by the organized medical community;
- not primarily for the convenience and/or comfort of you, your family, your physician, or another provider of services;
- not "investigational;" and
- performed in the least costly setting, method or manner, or with the least costly supplies required by your medical condition.

….

It is important for you to remember that when medical necessity determinations are made, it is solely for the purpose of determining whether to pay for a medical service or supply.  All decisions concerning your treatment must be made solely by your attending physician and other medical providers.

(AR 000332-333) (emphasis added).

In accordance with these Plan provisions, Medical Policy #348 states, "Charged-particle irradiation with proton beams does not meet Blue Cross and Blue Shield of Alabama's medical criteria for coverage in patients with clinically localized prostate cancer, because the clinical outcomes with this treatment have not been shown to be superior to other approaches including intensity modulated

radiation therapy (IMRT) … yet proton beam therapy is generally more costly than these alternatives.  (AR 000502-503).

With this background, BCBS denied the plaintiff's claim and appeal of that claim for benefits under the Plan.  The evidence in the administrative record demonstrates the claims administrator's decision was not "wrong."  The Plan gives BCBS discretion to determine plan coverage, including whether or not to cover treatments considered investigatory or not medically necessary.  (AR 000378). BCBS informed the plaintiff before he began treatment that the Plan did not provide benefits for PBRT.  That opinion, dated November 20, 2012, stated

> Our Medical Review staff has completed a review of [the] information and determined that we are unable to provide benefits for the proton beam radiation therapy.  This is based on the Blue Cross and Blue Shield of Alabama Medical Policy #348 for the treatment of prostate cancer.  The clinical outcomes with this treatment have not been shown to be superior to other approaches including the intensity modulated radiation therapy (IMRT) ….
>
> You may request one reconsideration of this predetermination.  Please include any additional medical documentation available for this reconsideration that has not been reviewed.

(AR 00018).  With this decision in hand, the plaintiff elected to move forward with PBRT.

When the plaintiff later sought payment for his treatment from the Plan, BCBS obtained the opinions of two independent medical experts on the acceptance of PBRT in the medical community.  (AR 000682, 000735).  Both experts noted

that no peer-reviewed comparative studies concluded PBRT was a more successful treatment than IMRT and therefore IMRT remained the accepted course of treatment. Against this backdrop, the undersigned cannot conclude BCBS's denial was "wrong." "'Wrong' is the label used by [the Eleventh Circuit] to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *Tippitt v. Reliance Standard Life Ins. Co*., 457 F.3d 1227, 1232 (11th Cir. 2006) (quoting *HCA Health Services of GA., Inc., v. Employers Health Ins. Co.,* 240 F.3d 982, 993 n.23 (11th Cir. 2000)).

Moreover, despite the plaintiff's arguments otherwise, the proper interpretation of medical research studies is not before this court. Rather, the sole issue is whether BCBS's decision denying coverage for PBRT was supported by the language of the Plan based on the information before the administrator at the time the decision was made. Under the arbitrary and capricious standard, "[a]n administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information." *Braden v. Aetna Life Ins. Co*., 597 F. App'x 562, 566 (11th Cir. 2014) (*quoting Slomcenski v. Citibank, N.A.,* 432 F.3d 1271, 1280 (11th Cir. 2005)). The relevant Plan documents, specifically Medical Policy #348, specifies that PBRT "does not meet Blue Cross and Blue Shield of Alabama's medical criteria for coverage … because the clinical outcomes

with this treatment have not been shown to be superior to other approaches … yet proton beam therapy is generally more costly than these alternatives." (AR 000502-503). Two independent experts confirmed PBRT for localized prostate cancer is still considered investigatory because of the lack of randomized, published studies. (AR 000682, 000735). Therefore, the administrative record adequately supports BCBS's determination that PBRT for prostate cancer was an investigatory or experimental treatment, and hence not medically necessary, for a patient with the plaintiff's medical conditions and history.[10]

The fact that Dr. Namihas opined PBRT was the best course of treatment for the plaintiff does not require holding otherwise. The opinions of a treating physician are not entitled to a presumption of deference, and plan administrators do not have to explain why they credit reliable evidence that conflicts with a treating physician's evaluation. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1279–80 (11th Cir. 2005) ("Giving more weight to the opinions of some experts than to the opinions of other experts is not an arbitrary or capricious practice."). The plaintiff's arguments for crediting some medical studies over other evidence in the

___

[10] The plaintiff argues he satisfied the criteria in Medical Policy #348 to have PBRT recognized as non-investigatory because "he beat cancer and the peer review documents show that the treatment is an approved and accepted treatment" and because the "treatment certainly 'improved his net health outcome' (he beat cancer and now is in remission)." (Doc. 30 at 13). However, the plaintiff points to no authority for such a results-based standard for payment of benefits. Under the plaintiff's argument, if his treatment had resulted in a less happy ending, BCBS would not have to provide coverage.

record is the kind of second guessing the ERISA standards do not allow. *See Braden*, 597 F. App'x at 566 (citing *Slomcenski*, 432 F.3d at 1280).

BCBS concedes that if the plaintiff could show the conclusions in Medical Policy #348 are wrong, then PBRT would be covered under the Plan, and the benefits decision would have been incorrect. (Doc. 28 at 18-19). The plaintiff argues BCBS relied on the lack of any studies demonstrating PBRT is superior to other forms of treatment, yet Medical Policy #348 only requires PBRT be demonstrated to be "equivalent" to other forms of treatment. (Doc. 30 at 15-22). Accordingly, the plaintiff asserts the Plan should cover the treatment because under the "Medical Necessity" definition contained in Medical Policy #348, BCBS does not deny PBRT met the first three criteria. (*Id*. at 15-16). The plaintiff continues that, therefore, the only issue is whether PBRT met the fourth criteria, which requires a showing the treatment is "[n]o more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results…" (*Id*. at 16, citing AR 000501).

The plaintiff argues BCBS required him to demonstrate instead that PBRT was a superior rather than equivalent treatment, which in turn created an ambiguity in the contract. (*Id*. at 17). The court finds no such ambiguity. Policy #348 clearly states PBRT used for the very purpose the plaintiff received it is not a

covered service.[11]  The fact that the policy provides the guidelines by which BCBS

determines whether services are investigational or within the definition of medical

necessity does not alter the fact that, as written, Medical Policy #348 contains a

review of the current literature available for PBRT and concludes that proton

therapy may be as beneficial as IMRT but is more costly to obtain equivalent

results.[12]  (AR 000502-503).  Thus, Policy #348 concludes that, while costing more

than other accepted treatment protocols for localized prostate cancer, PBRT has

not been demonstrated as having better results.

The plaintiff attempts to consider only "equivalence" versus "superiority" as

a requirement of the above policy statement, while wholly ignoring the cost side of

it.  BCBS responds by stating that because the plaintiff failed to demonstrate PBRT

is less costly, the only other means by which to show "medical necessity" is by

demonstrating superiority of treatment.  (Doc. 28 at 21) (citing *Baxter v. MBA

Group Ins. Trust Health and Welfare Plan*, 958 F. Supp. 2d 1223, 1233 (W.D.

---

[11]  The version of Policy # 348 in effect when the plaintiff received his treatment states,
"**Charged-particle irradiation with proton beams does not meet** Blue Cross and Blue Shield
of Alabama's medical criteria for coverage in patients with clinically localized prostate cancer,
because the clinical outcomes with the treatment have not been shown to be superior to other
approaches including intensity modulated radiation therapy (IMRT) or conformal radiation
therapy, yet proton bean therapy is generally more costly than these alternatives.  (AR 000502-
503) (emphasis in original).

[12]  In his April 2, 2013 letter to BCBS, Dr. Namihas admits "[a]s of today, there is no clinical
study out there to prove what method is actually superior …." (AR 000028).  Indeed, the studies
attached to Dr. Namihas's letter all conclude IMRT and PBRT provide similar or equivalent
results.  (AR 000032-71).

Wash. 2013)).[13]  In essence, the plaintiff's argument focusing only on equivalence would require health insurance plans to provide payment for more costly services and treatments when equally effective, lower cost options exist.[14]  Nothing in this argument demonstrates BCBS's decision to deny benefits was not reasonable.  The evidence in the administrative record at the time BCBS made its decision supports its determination that PBRT was investigational.  As previously stated, this court's role is not to decide whether PBRT is actually superior to IMRT but only whether the decision to deny benefits was arbitrary or capricious.  The court finds the defendant's determination to be reasonable and well-supported by the facts it had before it.  Because the undersigned finds the decision of the claims administrator was right, the court need go no further in the analysis.  *See Glazer,* 524 F.3d at 1246-1247 (citing *Tippitt*, 457 F.3d at 1232).

However, even if the undersigned found BCBS's decision was "wrong," the court cannot conclude the decision was not "reasonable."  Throughout his response

---

[13] In *Baxter*, the court decided "[b]ecause the court concludes that proton therapy is more costly than IMRT, in order to prevail on these cross motions for summary judgment, Plaintiff must demonstrate that proton therapy and IMRT are not equivalent treatments.  In other words, Plaintiff must demonstrate that proton therapy is a superior treatment to IMRT."  958 F. Supp. 2d at 1233.

[14] The plaintiff makes much ado over whether the Plan requires PBRT to be a superior treatment to IMRT before paying benefits and asserts the Plan has no such requirement.  Given that the plaintiff claims he must only prove PBRT has equivalent outcomes to IMRT, and that PBRT has shown equivalence, his argument that he selected PBRT over IMRT because it is a superior treatment falls apart.  (*See e.g.* AR 000169) ("I decided to receive the … treatment at Loma Linda instead of the IMRT therapy offered in Birmingham, because a 90% cure rate is far better than a 40% to 60% offered by Dr. Salter with IMRT therapy." ).  Clearly, the plaintiff did not seek out PBRT because he believed it was "equivalent" treatment.

to the defendant's motion for summary judgment, the plaintiff argues the merits, safety, and efficacy of PBRT. The plaintiff asserts this court should overturn BCBS's decision based on the plaintiff's disagreement with the decision. However, under the arbitrary and capricious standard of review, a claims administrator's decision should not be overturned merely because the plaintiff or a court may disagree with it. *See Turner v. Delta Family-Care Disability & Surv. Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002) ("It is irrelevant that the court or anyone else might reach a different conclusion"). Instead, under the arbitrary and capricious standard of review, the question presented is whether BCBS's "wrong" decision was nonetheless reasonable. *See Tippitt*, 457 F.3d at 1232. As previously noted, the success (or failure) of the plaintiff's treatment does not equate to a finding that a procedure should be deemed non-investigatory or medically necessary. As another court has noted, "[t]he arbitrary and capricious standard of review does not authorize this Court to play 'Monday morning quarterback' when it comes to such medical determinations." *Morse LLC v. Beckman Coulter, Inc.*, 455 F. Supp. 2d 1339, 1346 (S.D. Fla. 2006).

The evidence in the record supports a finding that BCBS's decision was reasonable. The Plan's provisions concerning experimental treatments, as well as the multiple layers of medical review which consistently concluded PBRT was investigatory and therefore not covered under the Plan, substantiates the

reasonableness of BCBS's decision to deny the plaintiff's claim for benefits. *See*

*HCA Health Services*, 240 F.3d at 994 ("If the court determines that the claims

administrator's wrong interpretation is reasonable, then this wrong but reasonable

interpretation is entitled to deference even though the claimant's interpretation is

also reasonable."). Given the demonstrated lack of agreement in the medical

community as to the proper role of PBRT treatment, the Plan's recognition of this

lack of agreement, the clear statement in Medical Policy #348 that PBRT for

prostate cancer is not a covered service, and the multiple reviews of its decision

undertaken by the Plan, the denial of benefits here was neither arbitrary nor

capricious.

Finally, the plaintiff's argument that other health care plans cover PBRT

does not compel a different result.[15] The plaintiff points to no statute, case, or

other source of precedent requiring all health care plans, or even all health care

plans administered by BCBS entities, to provide identical coverage. Moreover, the

plaintiff has not provided the court with any comparative analysis between the

language of these plans and the language in the Plan. Yet differences in how plans

define experimental/investigational could lessen or eliminate any probative value

---

[15] The plaintiff fails to identify any such plan. The cases the court has found which have considered such coverage under any health care plan have each found that PBRT is experimental, investigational, not superior, or more expensive than other accepted treatments such as IMRT. *See Baxter v. MBA Group Ins. Trust Health and Welfare Plan*, 958 F. Supp. 2d 1223, 1237 (W.D. Wash. 2013); *Turner v. Alcoa, Inc.*, 2017 WL 627447 (E.D. Tenn, Feb. 15, 2017); *Dillon v. Timken Co.*, 2013 WL 4508975, at *2 (W.D. Penn. Aug. 26, 2013); *Garner v. Grp. Health Plan*, 2011 WL 1321403, at *5 (E.D.N.C. Apr. 4, 2011).

in comparing different plans' treatment of proton beam therapy. *See Turner,* 2017 WL 627447 at *2 (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 115 ("The validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms *in the plan at issue*.") (emphasis in original). The plaintiff's argument that other health care plans cover PRBT for localized prostate cancer does not compel a finding that BCBS's interpretation of the Plan here was arbitrary, capricious, or even incorrect.

For the foregoing reasons, defendant BCBS's motion for summary judgment (Doc. 27) is due to be granted.

## IV.    <u>Conclusion</u>

For all the reasons stated above, the court is of the opinion that the decision on behalf of the Plan was correct. Defendant SCSHP's motion for judgment on the record (Doc. 24) is due to be granted. Because no genuine issues of material fact exist, defendant BCBS's motion for summary judgment (Doc. 27) is due to be granted as a matter of law. A separate order will be entered.

**DONE** this 26th day of January, 2018.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE